## BENJAMIN P. GILMAN *vs.* EUROPEAN & NORTH AMERICAN RAILWAY COMPANY.

*Railroad fence. Proximate cause. Contributory negligence.*

By the requirements of R. S., c. 51, § 20, legal and sufficient fences are to be made on each side of land taken for a railroad, where it passes through inclosed or improved land or woodlots belonging to a farm, before a construction of the road is commenced, and they are to be kept in good repair by the corporation.

An agreement between a railroad corporation and an adjoining proprietor not to require them to fence but one side of their road across his land until notified by him, will not relieve them from any liability they may thereby incur to any person not cognizant of or assenting to it.

If, in an action against a railroad company for the value of the plaintiff's ox killed by their train, the defendants would have their exceptions sustained upon the ground that the ruling complained of is in conflict with the well-established principle that a railroad company is not bound to fence against cattle wrongfully upon the adjoining close, it must appear from the exceptions that there was testimony tending to show that the plaintiff's ox was wrongfully there.

The plaintiff's lot and those adjoining on the north and south, were crossed by the defendants' road, and bounded on the east by a river, the division fence between so much of the plaintiff's and the south lot as lay between the railroad and river (being the plaintiff's pasture) being defective. The railroad fence extended on both sides of the road across the plaintiff's lot; that on the river side of the road, across the north lot setting several feet further from the track did not form a continuous line with that across the plaintiff's; while pursuant to an agreement between the defendants and the proprietor thereof, there was no railroad fence on the south lot on the river side of the road. The plaintiff's pasture was also fenced on the river bank above high-water mark. An ox of the plaintiff escaped from his owner's pasture through the gap of the defendants' fence, occasioned by want of continuity upon the track, was driven thence by the defendants' employee upon the north lot, whence during the next six hours, the ox wandered along the river bank across his owner's land outside of its inclosure, to and upon the south lot and thence upon the track, where he was killed by the defendants' locomotive while being managed with proper care on their part. *Held*, That the gap in the defendants' fence on the plaintiff's land through which the animal escaped from his pasture was the efficient procuring cause of the accident, and that the maxim, ' *causa proxima*,' etc., had no proper application to the case.

Also, *held*, that the omission of the plaintiff to erect a sufficient fence between his pasture and the south lot cannot be imputed to him as contributory negligence.

Gilman *v.* European and North American Railway Company.

ON EXCEPTIONS.

TRESPASS for negligently killing one steer, and injuring another Aug. 11, 1870; and killing an ox Sept. 21, 1870, by the defendants' locomotive engine.

The plaintiff's land, and the adjoining lot on the north owned by James Page, and adjoining lot on the south owned by Samuel Page, are bounded on the east by the Penobscot river, and crossed by the defendants' railroad.

There was evidence tending to show that the lots were severally inclosed by divisional fences, but the fence between so much of the plaintiff's lot as lay between the railroad and the river, and constituting the plaintiff's pasture, and Samuel Page's lot on the south was defective.

That the defendants had constructed their fence across the plaintiff's lot on both sides of their road; across James Page's lot on the river or easterly side of their road, several feet further from the track than the fence on the same side of the road on the plaintiff's, so that instead of forming a continuous line there was a jog, which consisted of a defective brush fence; that when Samuel Page settled the land damage with the defendants, it was agreed between them that the defendants should not be required to fence his land on the river side of their road until he should notify them to do so; and that he did not give them such notice, and they did not build it until after Sept. 21, 1870.

That there was a defect in the defendants' fence at the corner of James Page's land, and where it joins the plaintiff's pasture, and on the plaintiff's land.

That on the morning of Sept. 21, 1870, the plaintiff's ox passed through such defective fence upon the railroad track, whereupon an employee of the defendants drove the ox through the bars of James Page's fence into the latter's pasture, between the railroad and river, the employee supposing it to be the plaintiff's pasture.

That after the plaintiff's steers were killed, and before his ox was killed, the plaintiff built a fence from the line between his land and that of James Page's around and near the bank of the river,

above high-water mark, to the railroad on the boundary line between his land and land of Samuel Page.

That the ox wandered from the pasture of James Page, to which place he had been driven by the defendants' employee in the morning, across the plaintiff's land and outside of the plaintiff's pasture fence on the bank of the river, seventy rods, upon Samuel Page's land between the railroad and river, and thence upon the railroad track, where he was killed about noon of the same day, by a passing train of the defendants.

The presiding judge instructed the jury that if the ox escaped through the defendants' fence on plaintiff's land, at the corner of James Page's land, on account of a defect therein, defendants would be liable, although the ox was put into James Page's pasture by defendants' servant, and afterwards came down and around the fence of plaintiff across plaintiff's land, being on the river side of the railroad outside his fence, on to land of Samuel Page, and from land of Samuel Page, on to the railroad track. And although there was such an agreement between Samuel Page and defendants, that defendants need not fence between his land and track, until he notified defendants so to fence, and although he did not so notify defendants.

The jury rendered a verdict for plaintiff for $200, and found specially that the railroad fence at the corner of James Page's land was defective, that plaintiff's ox, in consequence of such defective fence, and through it passed on to the railroad track on the morning of Sept. 21st.

That the railroad company was not guilty of any neglect in the management of the train when the injury to the steers, or the killing of the ox occurred. To which rulings defendants alleged exceptions.

*J. W. Emery & Chas. P. Stetson,* for the defendants.

Where there is no agreement, prescription, or statute assignment, a tenant is not bound to fence against an adjoining close; in such case there being no fence, each owner is bound to keep his cattle

on his own close. *Rust* v. *Low*, 6 Mass. 90; *Little* v. *Lathrop*, 5 Greene, 356; *Sturtevant* v. *Merrill*, 33 Maine, 62.

When a tenant is bound to fence against an adjoining close, it is only against such cattle as are rightfully in that close. *Lord* v. *Wormwood*, 29 Maine, 282. And such is the case where it is provided by statute that the party in fault shall be liable for all damages arising from his neglect. *Lawrence* v. *Coombs*, 37 N. H. 331.

These principles have been applied to the construction of the statutes requiring railroad corporations to fence the lines of their railroad through inclosed or improved land. *Towns* v. *Cheshire R. Co.*, 21 N. H. 364; *Perkins* v. *Eastern R. Co.*, 29 Maine, 307; *Cornwall* v. *Sullivan R. Co.*, 28 N. H. 161; *Eames* v. *Salem & L. R. Co.*, 98 Mass. 566.

The rights of persons having no interest in the adjoining close, remain unaffected by the statute, and are to be defined and protected by the common law, and the obligation of railroad companies to build fences along their road only extends to the owner and rightful occupier of the adjoining close, and not to mere trespasses thereon. *Bemis* v. *Conn. & Passumpsic R. Co.*, 42 Verm. 378; *Jackson* v. *Rut. & Bur. R. Co.*, 25 Verm. 156; Redfield's Am. Railway Cases, 374 and notes. *Woolson* v. *Northern R. Co.*, 19 N. H. 267; *Chapin* v. *Sullivan R. Co.*, 39 N. H. 53 and 564; *Mayberry* v. *Concord R. Co.*, 47 N. H. 391.

Where there is a contract with the land owner to make and maintain the fence required of the company, or that the company shall not be required to build the fence across his land, the corporation cannot be liable to him because there is no fence, nor to any one except passengers and those persons who are rightfully upon the railroad. *Cornwall* v. *Sullivan R. Co.*, 28 N. H. 171; *Jackson* v. *Rut. & Bur. R. Co.*, 25 Verm. 156.

The plaintiff's ox came on to the railroad before he was killed, from the land of Samuel Page, on the river side, and when the land damages were settled, it was agreed by the railway company and Page that defendants should not be obliged to fence his land on the river side until he should notify the company, and that he

did not so notify the company until after the killing of the ox. The ox was therefore either a trespasser and wrongfully on Samuel Page's land, or there by consent of Samuel Page.

If he was a trespasser, then plaintiff cannot recover. If on Page's land by consent of Page, plaintiff can stand no better than Page,— Page could not recover for damage to his cattle going from his land on to the railroad, because there was the agreement not to fence,— it is equally clear that plaintiff cannot recover.

The fact that the ox six hours before escaped through a defect in the fence of defendants seventy rods distant, and was turned from the railroad track into the pasture of James Page cannot render the company liable.

Because he came after that into the custody and on to the premises of plaintiff, and thence on to Samuel Page's land and thence on to the railroad.

Because the defect in the fence at corner of James Page's land was not the proximate cause of the injury. Sherman & Redfield on Negligence, § 10, p. 12; *Moulton* v. *Sanford*, 51 Maine, 127; *Marble* v. *Worcester*, 4 Gray, 397; *Ryerson* v. *Abington*, 102 Mass. 532.

Because the negligence of plaintiff contributed to produce the injury. *Moore* v. *Abbott*, 32 Maine, 46; *Coombs* v. *Topsham*, 38 Maine, 204; *Anderson* v. *Bath*, 42 Maine, 346.

It was the duty of plaintiff to have a proper fence between him and Samuel Page, the want of such fence was negligence on his part, contributing to the injury, or rather the proximate cause of the injury.

*W. C. Crosby*, for the plaintiff.

BARROWS, J. The plaintiff's land is bounded easterly by the Penobscot river, northerly by land of James Page, and southerly by land of Samuel Page. The defendants' railroad intersects all three lots, where the land is improved. There was a line fence between the plaintiff's land and James Page's, and a defective one

between plaintiff's and Samuel Page's on the easterly or river side of the railroad. Defendants had built their fence across the plaintiff's land on both sides—across James Page's on the river or easterly side, and across Samuel Page's on the westerly side of their railroad; and in settling land damages with Samuel Page they had obtained a stipulation from him that they should not be required to fence the easterly or river side of their road across his land until notified by him, and at the time the plaintiff's ox was killed they had not been notified. But there was a defect in defendants' fence on the plaintiff's land at the point where their fence across James Page's land on the river side of the railroad commenced, and through that defect the plaintiff's ox passed from his pasture on to the railroad some five or six hours before he was killed. Several weeks before this time, the plaintiff's steers had been injured on the railroad, and thereupon he built a fence across his own land from James Page's line, around and near the bank of the river above high-water mark, continuing it on the boundary between his own land and land of Samuel Page to the railroad, and thus effectually inclosing his pasture except for the defect in the defendants' fence above mentioned. The morning of the day the ox was killed, an employee of the defendants found the ox on the railroad track, drove him from it into James Page's pasture (erroneously supposing it to be the plaintiff's), and thence it appeared that the ox had traveled around on the river bank across his owner's land, but outside of his pasture fence, about seventy rods, to Samuel Page's land, which was unfenced along the line of the railroad on that side, in accordance with the stipulation above referred to, and so the ox went directly from Samuel Page's land upon the track, and was killed.

The defendants' claim to be relieved from paying for him by virtue of their agreement with Samuel Page, inasmuch as he at last came on to the track from Samuel Page's land.

But the presiding judge instructed the jury that if the ox escaped through the defendants' fence on his owner's land, and by reason of a defect therein, the defendants would be liable, notwithstanding

the agreement between Samuel Page and the defendants, and notwithstanding the facts above stated as to the whereabouts and wanderings of the ox after his escape from the owner's pasture as aforesaid.

The defendants insist now that the ruling was erroneous, because they say that the ox at last came upon their track from S. Page's land, and whether he was there by consent of Page or as a trespasser, the owner cannot recover, and they cite cases in which it is held with more or less distinctness that at common law every man must, at his own proper peril, keep his cattle on his own land; that except by virtue of some agreement, prescription, or statute assignment or requirement, no one is bound to fence against an adjoining close; and that, when one is thus bound, it is only against the cattle lawfully upon such close; that these principles have been and should be applied to the construction of statutes requiring railroad companies to fence their roads where they pass through inclosed or improved land; that those statutes do not affect or add to the rights of those who have no interest in the adjoining land, nor the obligations of the railroad company to them, but those rights and obligations still remain as at common law; and that any contract which the company may make with the adjoining proprietor as to the building or omitting to build the statute fence through his land is valid and binding upon such proprietor, and relieves the company from any liability for injury to his cattle or any cattle coming upon the track from his land, to the extent of its provisions, unless such injury is inflicted by the wanton or careless mismanagement of their engines and trains.

Hereupon they argue that if the ox was on S. Page's land with Page's consent, his owner can have no greater rights against the company than Page himself would have had; that Page could not recover in such a suit because of their agreement; that they are not liable on account of the original escape, because the ox afterwards went across his owner's land; and that the negligence of plaintiff in not fencing between his land and that of Samuel Page, on the river bank,—not the defect in the defendant's fence by

which the animal first escaped,—was the proximate cause of the injury, or at least contributed to produce it.

But we think the defendants fail to bring their case within the principles decided in the cases they cite, and behind which they seek to intrench themselves, in more than one important particular.

1. If they would have us decide that the rulings of which they complain militate against the cases which hold, as we have done in *Perkins* v. *Eastern R. R. Co.*, 29 Maine, 310, that the railroad company is not bound to fence against cattle wrongfully upon the adjoining close, they should, at the very least, have made it appear in their exceptions that there was testimony tending to show that the plaintiff's ox had no right to pasture upon Samuel Page's land there between the railroad and the river. In the absence of any such statement we infer that those decisions were inapplicable to the facts in the present case. Were there nothing else to found it on, the form of the defendants' argument would fairly justify the inference. Their position is that if the ox was on Page's land with his consent, the plaintiff is barred from recovering by reason of the agreement with Page that they need not build the fence until notified by him, thus assuming the fact with regard to Page's consent to be as the plaintiff claims it was. But it was incumbent upon the excepting party to state how the fact was, if it were otherwise. We cannot presume a fact which the case does not show, in order to base upon it an argument that there was error in the instructions.

2. The defendants also cite cases in which it has been held that where there is a contract with the adjoining proprietor that the company shall not be required to build the fence across his land, he cannot recover for injuries accruing from the want of such fence. But the defendants had no such contract with the plaintiff. They claim that the same result follows as to all cattle lawfully running upon Page's land. But we do not think that an agreement like this for the nullification of a statute of this State can be regarded as having any effect upon the rights of any one who is not a party to it, nor shown to be cognizant of or assenting to it. The statute requirement is explicit. 'Legal and sufficient fences are to be

made on each side of land taken for a railroad where it passes through inclosed or improved land, or woodlots belonging to a farm, before a construction of the road is commenced, and they are to be maintained and kept in good repair by the corporation.' A penalty is imposed for the breach of this law. R. S., 1857, c. 51, § 23 *et seq.;* R. S., 1871, c. 51, § 20 *et seq.*

An action lies in favor of one who, without fault on his own part, has suffered damage by reason of the defendants' disregard of the law. If they will stipulate with adjoining proprietors to suffer them to break it, such an agreement will not relieve them from any liability they may thereby incur to any innocent third party. A covenant of that description does not 'run with the land.'

The statute provision is an important one for the safety of the traveling public, the railroad company itself, and the whole community. An agreement to disregard it will bar the rights of no one who is not culpably consenting to it. It follows that the ruling was right, even if the want of the fence on S. Page's land is to be regarded as the proximate cause of the injury.

3. But we think it is a refinement quite too subtle to relieve the defendants from liability, when the ox escaped from the owner's inclosure on to the track by reason of the defect in the defendants' fence, to claim that this was not the proximate cause of the accident because he was driven thence by a railroad employee into another man's pasture, and strayed thence across his owner's land outside of his inclosure on to the track again at the place where he was killed. He escaped from the inclosure in which his owner had placed him for safe keeping through the fault of the defendants. He was not restored by them to the custody of the owner. That he was driven on to Page's land and returned again upon the track, after crossing unenclosed land belonging to his owner, can make no difference as to the liability of the defendants.

If, after thus escaping upon the track, he had strayed through other defects in the defendants' fences upon the lands of other adjoining proprietors before he met his death upon the track, there would be no propriety in permitting the defendants to set up the

Gilman *v.* European and North American Railway Company.

fact that he was unlawfully upon such neighbors' lands, because it was through their fault and not the fault of the plaintiff that he was there at all. They could not be thus permitted out of two wrongs to make a right. ' *Nemo ex suo delicto meliorem suam conditionem facere potest.*'

The case bears no resemblance in its facts to that of *Eames* v. *S. & L. R. R. Co.,* 98 Mass. 561. Neither is it one to which the maxim, *causa proxima, non remota, spectatur* can be usefully or properly applied. There would be just as much propriety in attributing the loss to the perversity of the animal in remaining upon the track instead of moving aside at the approach of the engine, as there would be in reckoning as a proximate cause its wanderings after it had escaped from the owner's inclosure through the fault of the defendants. Their neglect was the true efficient procuring cause, without which the accident could not have happened.

4. The plaintiff does not appear to have been negligent in any respect. It would seem that he had taken special care after the accident to his steers, and fenced his pasture against the river as well as on the line between the pasture and S. Page's land, so that his cattle would have been secure but for the defect in the defendants' fence. It cannot be imputed to the plaintiff as negligence, that he did not fence between his land and the land of S. Page on the river bank, where his cattle were not allowed to run, and where the ox could not have gone if the defendants had done their duty. None of the cases which have turned upon the question of contributory negligence on the part of plaintiffs, present similar features or anything analogous.

We are satisfied that the instruction given by the presiding judge, directed the attention of the jury to the only question they had to consider, and that the matters relied on by the defendants, afford them no legal defense to the plaintiff's claim.

*Exceptions overruled.*

APPLETON, C. J.; CUTTING, KENT, and WALTON, JJ., concurred.