INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V.
THOMAS RICHMOND.

Decided March 26, 1902; April 23, 1902.

**1.—Railway—Killing Stock—Fencing.**

The statute making a railway liable for stock killed when it fails to fence its track is for the protection of the public, and not merely of the landowner; and when by agreement with the latter an opening in the fence is left, for his convenience, at a point where it is not a way of necessity nor required by statute, the fence is not such as is necessary to relieve from liability for killing stock of a third person, not a party to the agreement, which entered on the track from the premises of such landowner, through such opening.

**2.—Case Criticised.**

The ruling of the Supreme Court in Railway v. Hancock, 93 Texas, 446, criticised but distinguished.

Appeal from the County Court of Hays. Tried below before Hon. Ed R. Kone.

*G. W. Allen,* for appellant.

*Will G. Barber,* for appellee.

FISHER, CHIEF JUSTICE.—This suit was brought by appellee to recover of appellant the value of one horse alleged to have been killed by the appellant's cars and locomotives, and for damages to one mule alleged to have been injured at the same time and in the same manner, appellee charging that appellant was a railroad corporation operating a line of railroad at the point where the said stock were injured, and that said injury was caused by the negligence of defendant and its employes in operating its said cars and engines, and in failing to keep in reasonable repair a fence along its right of way. Suit was instituted in the Justice Court and appellee recovered a judgment; appellant appealed to the County Court, and appellee there obtained judgment for the sum of $185, the entire amount sued for, from which judgment appellant brings the case to this court for review.

The animal killed and the one injured were the property of appellee. The animals, when in the possession of a tenant of appellee who had stopped for the night with his uncle, who was a tenant upon the farm of Mr. Tom Johnson, were placed in the stable that belonged to the Johnson farm. Around the stable was a lot fence which had a gate opening into a field owned by Mr. Johnson. After the animals were placed in the stable for the night, the stable door and the gate that led into the field were closed. Some time during the night the animals escaped from the stable and lot and entered Johnson's field through the gate, and went across the field to an opening in the appellant's right of way fence, which separated the right of way from Johnson's field, the

Vol. 28 Civil—33.

latter adjoining the right of way on the west. The animals went through this opening in the right of way fence onto the track, where the horse was killed and the mule injured by one of appellant's trains. Johnson did not own the land east of the track. Along the right of way fence upon the east side was a public road. The opening in the fence that separates the right of way from Johnson's inclosure was put there for the convenience of the latter, so as to leave him a convenient way to the public road on the east side of the track. This opening and way was not one of necessity, as there were accessible to Johnson and his tenants other convenient ways open to the public road. There was no gate or bars to the opening in the right of way fence through which the animals escaped, nor had the opening been closed for some time. The evidence does not show that appellee ever used the opening in the right of way fence in Johnson's field, or that he had any control of the same; nor does it appear that he was a party to the arrangement between the railway company and Johnson, by reason of which the opening was made for the convenience of the latter.

Article 4528, Sayles' Civil Statutes, makes every railroad company liable to the owner for the value of stock killed or injured by its locomotives or cars in running over their respective railways. And if the railroad company fence its road, it shall only be liable in case of injury resulting from want of ordinary care. It is not pretended that appellant is liable by reason of any want of ordinary care, as provided for in the latter part of that article of the statute.

Articles 4427 to 4434 provide for what are termed neighborhood crossings; and articles 4434 and 4435 provides for crossings of public roads and streets. The crossings over the tracks and openings in the right of way fence provided for in the preceding articles 4427 to 4435 inclusive, except the openings provided for in the concluding part of article 4427, are for the benefit of the public; and it is clear from the facts as stated, that the opening in appellant's fence in question does not fall within that class, for it was made solely for the use of Johnson, the owner of the field bounding the track on the west, and the public have no interest in it. The concluding part of article 4427 provides that if the right of way fence divides any inclosure, at least one opening shall be made. And this has been construed to mean that such opening is solely for the benefit of the owner of the inclosure, so as to admit access and passage to and from those parts of the inclosure divided by the right of way fence. Railway v. Hanacek, 55 S. W. Rep., 1117. The opening in question does not fall within the above class, because Johnson's inclosure only extended to the right of way fence west of the track, and he did not own east of it. The opening was not made in order to admit passage from one part of an inclosure to another part. There was no inclosure divided by the right of way fence. We have cited all the provisions of the statute relating to this subject, and by none is the opening in question, placed in the right of way fence for the

convenience of Johnson, authorized; nor can it be allowed on the ground that it was a way of necessity, because the facts show that he was not entitled to the opening for any such purpose. There existed other convenient ways in use open to the public road.

This state of facts presents the question whether the railway company can be excused from liability to the public and persons other than the owner of the premises for whose benefit the opening is made, when it leaves openings in its right of way fence when such openings are not provided for or authorized by law or the owner is not entitled to same as a way of necessity.

Article 4528 creates liability for all stock killed or injured when the road is not fenced. And when such is the case, liability for value of stock killed becomes absolute; although it might be made to appear that a fence at that particular place would not have excluded the animals from the track, or that by reason of the circumstances a fence would not have prevented the injury. Railway v. Hudson, 77 Texas, 497. The question was directly passed upon in the case cited, and was in effect also so decided in Railway v. Childress, 64 Texas, 347 and Railway v. Cocke, 64 Texas, 153.

A debarment within the meaning of the statute is a fence which is reasonably sufficient to prevent live stock from going upon the track (16 American and English Encyclopedia of Law, second edition, 485; 12 American and English Encyclopedia of Law, second edition, 1081); and the duty rests upon the railway company to exercise reasonable diligence or ordinary care to maintain it in that condition. 16 Am. and Eng. Enc. of Law, 2 ed., 493; Railway v. Cash, 28 S. W. Rep., 387.

The statute imposing liability for failure to fence does not apply to places which public necessity and convenience require should be left unfenced (Railway v. Cocke, 64 Texas, 154); or at places where the articles of the statute previously mentioned excuse the railway from fencing; but as to all other places, it is clear that liability exists if the fence is not erected and proper diligence used to maintain it in condition to exclude stock from track. When openings are left in the right of way fence where the railway is not required to leave them, or in other words, where they are not authorized by law, the fence is not complete; and it would be no defense that this condition was attributable to an arrangement with an adjoining owner, so far as the rights of the public or third parties may be affected by the failure to fence at that particular place.

Statutes such as ours, creating liability to the owner of stock killed or injured when track is not fenced, are held to imply the duty to fence, and the purpose of such law is not merely for the benefit of the adjoining landowner, but is generally for the protection of live stock, and the more important purpose of promoting the security of persons and property passing over the railroads. 12 Am. and Eng. Enc. of Law, 2 ed., 1066.

In Railway v. Childress, 64 Texas, 346, it was held that the object of the statute was to compel railway companies to fence their tracks for the purpose of preventing damage to live stock and the still more important purpose of protecting the traveling public. This ruling was approved in Railway v. Rowland, 70 Texas, 303; and Railway v. Bender, 87 Texas, 100. This is the purpose and object that is generally given to these statutes, and prevails in the Supreme Court of the United States, and we believe in every State within the Union, so far as our investigation has extended, with the exception of two. The following authorities, with many others·that could be cited, maintain this view: Hays v. Railway, 111 U. S., 235; Railway v. Johnson, 59 Ind., 190; Railway v. Roads, 33 Kan., 641; Gillam v. Railway, 26 Minn., 269; Dickson v. Railway, 124 Mo., 140; same case, 46 Am. St. Rep., 433; Blair v. Railway, 20 Wis., 254; Fordyce v. Jackson, 56 Ark., 597; Keyser v. Railway, 56 Mich.; same case, Am. St., Rep., 405; Stinttgen v. Railway, 80 Wis., 498; Isabel v. Railway, 60 Mo., 484; Railway v. Grablin, 38 Neb., 90; Domegan v. Ehrhard, 119 N. Y., 472; Sullivan v. Railway, 19 Ore., 323; Welsh v. Railway, 53 Iowa, 634; Railway v. Beckwith, 129 U. S., 326; Norris v. Railway, 63 Am. Dec., 623; Gillman v. Railway Co., 60 Me., 244.

In Sullivan v. Railway the Supreme Court of Oregon, and in Welsh v. Railway the Supreme Court of Iowa, and in Railway v. Beckwith the Supreme Court of the United States, in construing statutes which, like ours, did not in express terms require railways to fence their tracks, but made them liable for value of animals killed, held that, by implication, the duty to fence was required, in order to protect the public as well as animals.

In Norris v. Railway it is said that the duty to fence is not only for protection to those living contiguous to the track, but for the public, and when they do not fence, they must know that injuries may probably result.

The court in Railway v. Roads, 33 Kansas, 641, in construing a somewhat similar statute to ours, held that the purpose of the statute was not alone for the protection of domestic animals, but also to promote the security of persons and property passing over the roads, and was not designed merely to protect adjoining owners. That the duty to fence was an obligation to the public generally. To the same effect in construing a similar statute is Gillam v. Railway, 26 Minnesota, 269.

Hays v. Railway, Dickson v. Railway, Donnegan v. Ehrhard, and some of the other cases cited, supra, were for injuries sustained to persons by reason of failure of railways to fence, and in which failure to fence was relied upon as grounds of recovery. The doctrine as above announced was recognized and the statute concerning the duty to fence track was applied, and the failure to comply therewith was regarded as negligence.

In Railway v. Wilson, 79 Texas, 371, it is held that, in view of the

law that permits a railway to fence its right of way, and if this is not done and derailment of a train is caused by collision with an animal on the track, it is a fact, in a personal damage case, that may be looked to on the question of care.

If the purpose of the statute is not solely for the benefit of the adjoining landowners, and is also for the protection of the public, the railway companies and the owners of land adjoining the tracks can not, by arrangements between themselves, contract away the rights of the public or interfere with or prevent the operation of the statute at places where the road should be fenced. The adjoining owner, by agreement with the railway company, may dispense with the performance of the duty to fence, so far as his rights may be affected, but no such agreement between them can be given the effect of relieving the railway company of the burden imposed by the statute when the failure to fence may affect the rights of one not a party to such arrangement.

In Railway v. Thomas, 84 Indiana, 196, the court says: "A private way is not one in which the public have an interest, and closing it by fence or gate can affect only the person to whom it belongs. We are unable to see any principle upon which railroad companies can be absolved from the duty to fence such a way. If they are relieved from fencing any private way, where can any line be drawn, for there are many kinds of private ways differing in size and character, but all agreeing in the one particular, that in them the public have no interest. * * * A railroad company can not escape the performance of the duty devolved upon it by law, by showing a contract with an adjacent land owner to maintain the fence. This is so expressly decided in Railway v. Ridge, 54 Indiana, 39. There are cases holding that the person who contracts with the railroad company and fails to perform his contract, precludes himself from maintaining an action, and this we think is a correct conclusion. Railway v. Smith, 16 Ind., 102; Railway v. Shiner, 17 Ind., 295. But the rule laid down in these cases by no means leads to the conclusion that such a contract will deprive a man who is a stranger to it of the right conferred upon him by law to sue the railway company, and drive him to an action against the person with whom the company contracted. A man can not be deprived of his law given right by a contract to which he is a stranger." To the same effect is Gillman v. Railway, 60 Me., 244; Warran v. Railway, 41 Iowa, 484; Railway v. Williamson, 104 Ind., 154; Railway v. Todd, 36 Ill., 414. In these cases where this principle was applied, the stock of one not a party to the agreement between the railway companies and the owners of adjoining lands trespassed upon the inclosure of such adjoining owners, and from there went upon the track through openings in the right of way fence, placed there for the convenience of the owner of the inclosure. This principle was recognized by the court in Railway v. Bellows, 39 Southwestern Reporter, 1000.

A case much in point is Railway v. Wessendorf, 39 Southwestern Re-

porter, 132, which construes Railway v. Glenn, 30 Southwestern Reporter, to apply to openings in fence where track divides an inclosure; but holds that where the track divides the lands of two different owners, and in the right of way fence on one side is placed a gate for the convenience of the owner of the premises upon that side, it is not such an opening as is authorized by law, and that if the animal of some third party goes upon the track through such gate and is injured, the railway company is liable. In other words, the effect of the ruling is that an owner who is not entitled to an opening can not, by arrangement for one between him and the railway company, affect the rights of third parties whose stock may enter upon the track through such opening.

In Railway v. Patterson, 8 Texas Civil Appeals, 368, it is held that a fence around an inclosure through which the track may run is not a fencing of the right of way within the meaning of the statute.

In Gillam v. Railway, 26 Minnesota, 269, it was held that the ownership by the railway company of the section of land through which the track was located did not excuse it from the duty of fencing. In this case, it was said: "Of the cases that consider statutes of this kind, we think those are decided upon the better reason which hold that such statutes are police regulations, designed for the protection of all, and not merely rules for constructing division fences between adjoining owners, for neglect of which only an adjoining owner may complain;" and in support of this principle cites Corwin v. Railway, 13, N. Y., 42; Shepard v. Railway, 35 N. Y., 641; Browne v. Railway, 12 Gray, 55; Spence v. Railway, 25 Iowa, 139; Railway v. Townsend, 10 Ind., 38; Stewart v. Railway, 32 Iowa, 561.

In Railway v. White, 94 Indiana, 257, and Railway v. McGarock, 90 Virginia, 507, it is held that the duty to fence is not excused because the adjoining landowners may have erected fences along the right of way. In order to accomplish the purpose of the statute, the public and owners of animals which may be injured may look to the law for the measure and extent of the liability of the railway companies, and such liability can not be bartered away and discarded except as to those who may consent that it may be done; nor can the duty imposed by law for the public good be delegated upon others by these corporations, so as to absolve the latter from liability to those who do not by contract, express or implied, assume such burdens.

A private opening in the right of way fence, placed there for the benefit of the owner of the adjoining inclosure, may and doubtless would charge him with the duty of keeping it closed by gate or otherwise, in so far as his rights may be affected; but if it was at a place where a fence was required, the duty imposed by the statute upon the railway company, so far as the public are concerned, would require of the railway company, in order to fully discharge that duty, to see that such gates were closed. The inconvenience to the railway company in performing that duty is no reason why, in the interest of the public, it

should not be burdened with it. If openings were permitted at any and every place in the right of way fence, merely for the private convenience of the adjoining owners, with the consequence that railway companies were thereafter excused from the exercise of any care at such places in maintaining a fence reasonably calculated to exclude stock from the track, the principal purpose and object of the statute would be defeated. The admission of such a doctrine would practically nullify the statute, which ought not to be encouraged further than the advance made in that direction by the Supreme Court in the recent case of Railway v. Hanacek, 55 Southwestern Reporter, 1117. If by such an arrangement between the railway company and the adjoining owner the former may be excused, for the same reason a railway company may be excused from fencing any part of its track whenever the adjoining owners along the same may by agreement relieve it of that duty. The letter, spirit, and purpose of the law which imposes the duty to fence condemns any such construction. And, in view of the positive and unequivocal terms of the statute upon this subject, it would be judicial legislation, in the nature of a judicial repeal, for this court, or any other, to so pervert the law and give it such effect.

The facts of this case distinguish it from Railway v. Hanacek, supra, where the Supreme Court in effect held that where the track divided an inclosure, and private openings were left in the right of way fence for the convenience of the owner, in order to admit access to both sides of the inclosure, the railway company rested under no duty to keep the openings closed to third parties whose stock may enter the inclosure and wander upon the track through such openings. The futility of the efforts of this court possibly amount to folly, when attention is called to errors committed by the Supreme Court in passing upon questions which they have deliberately considered, but in this instance we can not forbear an assertion of our privilege of directing attention to what we conceive to be the error committed by that court in deciding Railway v. Hanacek.

The law which required or authorized railways to fence their tracks was in existence long prior to the enactment of the law which authorized private openings in inclosures. It was not the purpose of the latter act to repeal the former or qualify and limit its operation, so as to deprive the public of the benefit of the statute, or to give it an operation inconsistent with its object and purpose. Private openings in inclosures for the benefit of the owners thereof were intended merely for the convenience of such owners, who, as between them and the railway company, were charged with the duty of keeping the same closed. But if the duty rested upon the railway, in the interest of the public, to erect and maintain a fence, what provision of the law or rule of construction consistent with the general purpose of the statute would authorize the railway company to dispense with this requirement and relieve it of its duty to the public, merely for the convenience of an individual? There is noth-

ing upon the face of the statute that would justify such a construction. It is true, openings in the right of way for the benefit of the individual owners of inclosures are permitted, but it does not by any means follow that from this grant of statutory privilege to such owners, the implication ncessarily follows that the railway companies ceased to owe any duty to the public to maintain their fences. It is clear that it was not the purpose of the statute to dispense with right of way fences when the track ran through inclosures; and it is clear from the unquestioned weight of authority upon the subject where statutes similar to ours have been construed, that they are not passed simply for the benefit of adjoining owners, but for the more enlarged purpose of protecting the public. If this is true, it logically follows that when the Supreme Court, in the Hanacek case, in effect held that when private openings were made for the convenience of the owners of the inclosures at the request of the latter, and that thereafter no duty rested upon such corporations to the public at such places, the effect was to practically dispense with the requirement to erect fences through inclosures, and that any arrangement looking to this end, made between the owners thereof and the railway companies, were matters of private concern in which the public had no interest.

It is believed that it would practically defeat the purpose and object of the statute to relieve railway companies from fencing their tracks whenever the owners of adjacent lands might excuse them from so doing, or when such owners may fence their lands and thereby bring them within inclosures through which the track may run. Suppose the case of a railway constructed through a large pacture inclosed by a fence erected by the owner, and by arrangement between the latter and the railway company, for the convenience of the owner, no right of way fence is built, or if one is erected it is agreed that the owner of the premises shall maintain it in proper condition, or that the railway shall leave such openings as the owner may desire, and by reason of a defect in the inclosure fence the stock of a third party should enter the pasture and go upon the track; it is clear, in such a case, to be consistent with the statute and principles which underlie this question as determined by nearly all the cases upon the subject, that the railway company would be liable, yet the rule announced in the Hanacek case would excuse it from liability.

If the duty to fence can not be contracted away and exists in favor of the public, and a train is derailed by reason of collision with animals that came upon the track at places where the fence was defective or not complete, and that condition existed by reason of an arrangement for the private convenience of the owner of the adjacent lands, it is clear, under some of the authorities cited, that the opening left in the fence for the convenience of the owner could not be interposed as a defense to defeat the liability of the railway company for injuries sustained by some one in the collision. In these instances and others of a like kind which could be given, the Hanacek case, logically considered,

would have the effect of excusing liability. Where the opening is allowed for the private convenience of the owner of the inclosure, it certainly was not the purpose of the statute, by the use of the expression "opening," to altogether dispease with something in the nature of gates, bars, or shutters provided for the purpose of closing the opening when not being used, in order to make the fence at that point complete. To leave such opening without some provision of this character being made would purposely have the effect of relieving the railway company from fencing. The law does not say how wide the opening shall be, and if an opening is left such as may be provided for by a contract between the railway company and the owners, and no provision is made for closing it and keeping it closed, stock at that place could enter upon the track as easily as if there was no right of way fence erected at all.

Where such openings are made for the convenience of the owner of the adjacent lands, the railway company, in order to guard against the negligence or the want of care on the part of the owner in keeping the openings closed, could, by reason of its duty to the public looking to that end, so shape its contract with the owner as to hold him liable in the event such company is held responsible for its negligence in this respect. And in cases where this exaction can not be imposed upon the owner of the premises, and where the private opening is made for his benefit, and he, by virtue of his duty to the railway company to keep it closed fails to do this, he might be held responsible to the company, where his negligence has caused the injury. In keeping with the policy of the law, which imposes the burden upon the railway company to fence its track, the public or any person who may not be connected with the arrangement between it and the owner of the premises is entitled to look to the railway company for the performance of this duty and may hold it primarily liable when it fails in this respect, and can not be forced to an action solely against the defaulting owner of the premises.

It has been held, and correctly so, that the railway company must erect its fences along its right of way, and, when so done, is only charged with ordinary diligence to maintain them in proper condition. Now the railway company in fencing its track, in order to guard against danger from private openings in its right of way fence, could provide means by cattle stops and guards in order to prevent animals from wandering upon the track; or, in the absence thereof, could and should be held, in the interest of the public, to exercise reasonable diligence to see that the means used for closing the openings in the right of way fence are properly shut and kept closed. It is not meant by this that the railway company must have stationed at each private opening a watchman or guard, in order to keep the same closed; but the idea intended to be conveyed is that, to accomplish this purpose, they must exercise some sort of diligence commensurate with the requirements of the law upon this subject. There are places, such as public streets, roads, etc., at which the railway company is not required to fence its

track; but it is clear, from reading the provisions of the statute upon this subject and the decisions of the various courts where such statutes have been construed, that it was not the purpose to relieve the railway company from using some means to guard its track at these particular places so as to prevent animals from entering upon it. The whole tenor of the law upon this subject is, that because the railway company need not, at a particular place, make its fence complete, it is not, however, relieved from the exercise of diligence at such places to guard the same in the interest of the public. If the burden is imposed and the duty is not dispensed with at these public crossings, why should it not be required when the failure to fence and close up openings is made for the private convenience of land owners adjacent to the track? It can not be said that the railway company is absolved from all duty and care at these particular places, and that the public have no interest in the fencing of the track at such places. Collision of trains with animals upon the track entering through such openings are just as likely to occur as with animals entering upon the track at public crossings; and the disaster to the traveling public may be as great in the one case as in the other.

The Court of Civil Appeals, in the case of Railway v. Glenn, 30 Southwestern Reporter, 845, quotes with approval so much of the opinion in Adams v. Railway, 26 Pacific Reporter, 439, by the Supreme Court of Kansas, to the effect: "To place upon the railroad company the responsibility of keeping the gates closed would require that an employe of the company should be stationed at every crossing, to see that the landowner performs the required obligation resting upon him to close the gate provided for his special benefit. This would be an impracticable and unreasonable burden, and was manifestly not within the contemplation of the Legislature."

Where the action is brought for damages sustained by the landowner, on account of his animals entering upon the track through the open gate, this rule would be correct, for he by his arrangement with the railroad has assumed the duty, so far as he is concerned, of keeping the gate closed, and if he fails to do this he has no just ground of complaint. But this rule can not apply where the public interest or the rights of some third party are involved and it is certainly a novel doctrine that public duties may be dispensed with by railroad companies, because they may be put to extra expense and inconvenience in performing them. Really, from the performance of these duties the railway company might, and doubtless would, receive a corresponding benefit, because if they exercised reasonable diligence at these particular places to keep such openings closed, in order to prevent stock from entering upon the track, collisions with which are the frequent causes of derailment of trains, it would have a tendency to prevent accidents. The consequence necessarily follows that from every wreck or derailment of trains some damage or loss, more or less, is sustained by the railway companies.

As indicated in a previous portion of this opinion, after the fence is

once erected the railway company is only charged with the exercise of ordinary care in maintaining it in a proper condition, so as to exclude stock from the track. The intimation in the Kansas case quoted, as to the burden of diligence that would be imposed upon railway companies, in order to perform their duty, to the extent of keeping watchmen at each private crossing, would not, under the rule that prevails in this State, be absolutely required. If the openings in the fence were once provided with the proper means of closing the same, the railway company at such places would only be required to exercise ordinary care to see that the means for closing were in proper condition, and also to exercise like care to see that they were properly kept closed. The duty at these points would be no greater than that of maintaining the right of way fences along the road.

As said in Railroad Commission v. Railway, 16 Texas Civil Appeals, 137, in their relation to the public many duties are imposed upon railway companies, the observance of which might and doubtless would cause some extra expense and inconvenience; but this fact has never been recognized as an excuse for the failure or refusal to perform these duties when the interest of the public required their observance.

We have great respect for our Supreme Court, and generally defer to their superior learning and ability and most usually acquiesce without murmur in their decisions. It is in no captious spirit that this contention is made, but solely with a view to drawing attention to this question, so that if again presented, the suggestions made may be considered.

Our statute evidently intends (and those of other States that are similar have been so construed) to make the railway companies liable, although the animals injured were upon the track contrary to the wishes of the company, and were technically trespassing.

The general rule upon this subject, where liability is made to depend upon statute, when right of way fence is not erected, is that the railway companies are liable, although the animals injured may trespass upon the inclosure from which they enter upon the track. 16 Am. and Eng. Enc. of Law, 495; Gilliam v. Railway, 26 Minn., 268; Railway v. Roads, 33 Kan., 642; Spinner v. Railway, 67 N. Y., 153; Searles v. Railway, 35 Iowa, 490; Witthouse v. Railway, 64 Mo., 523, same case, 17 Am. Rep., 296.

In Corwin v. Railway, 13 New York, 42-54, it is said the law requires railroad companies to inclose their tracks with fences to prevent animals from coming on the track, and that one method provided for securing that object is the provision charging the companies with damages for injuries done to animals, and that it is not material from whence and under what circumstances the animals enter upon the track, provided they are enabled to get there by the absence of fences or cattle guards. In the absence of a stock law which is enforced to prevent animals from leaving the premises of their owners, it may be expected that animals, by reason of their instinct, will likely wander into inclosures which are

invitingly left open or not securely fenced. Under such circumstances, they are not so regarded as trespassers in the sense that no duty or care need be exercised by the owner of the premises or the railway company looking to their protection. This rule has been applied in a variety of instances, even to the protection of children of immature years who may wander into places of danger left open and unguarded by the owner of the premises. Railway v. McDonald, 152 U. S., 279, 280.

The deductions to be drawn from the evidence sufficiently indicate that the injuries which subsequently developed upon the mule were attributable to collision with the train.

We rule against appellant on the subject of taxing costs in the item of witness fees. The witnesses were duly subpoenaed to attend the justice court, and were informed, when the case was appealed, to also attend the county court, which they did, without the service upon them of additional subpoenas. So far as the disposition of this question is concerned, it is only necessary for us to state that, in our opinion, the facts stated by the trial court in the order entered in disposing of this question in effect shows that the witnesses waived the issuance of subpoenas, and that conduct was tantamount to an agreement to attend the county court as witnessed without the necessity of further subpoenas, The statute authorizes a subpoena to be issued for a witness, but there is nothing in the statute that forbids the witness to waive the issuance of such process, and to attend upon the trial in obedience to such waiver. And when such is the case, we think he is entitled to his witness fees, which, like other costs, should be taxed against the unsuccessful party. The judgment is affirmed.

*Affirmed.*

### OPINION ON REHEARING AND ON MOTION TO CERTIFY.

FISHER, CHIEF JUSTICE.—In the written argument on motion for rehearing, counsel for appellant makes this statement: "We respectfully submit that the court is not justified, under the facts in this case, in finding that there were accessible to Johnson, the owner of the land adjoining appellant's right of way where the animals went upon the track, and his tenants, other convenient ways open to the public road. According to the testimony of William Creed, the uncle of the young man who had the stock in charge at the time of the alleged injury, the upper crossing, near the upper side of the field, is in bad condition and is hardly ever used."

In reply to this statement, we copy from the statement of facts the following evidence, as appears on page 7 of the record: "There was a crossing and opening upon the upper side of the field that went out to the public road, besides this opening where the animals went upon the right of way. There was also an opening or gate at the Harwood house to get into the public road from the field where my uncle lived." The

uncle referred to here is William Creed, mentioned in the above statement of appellant.

Again on pages 15 and 16 of the record, Mr. Johnson, the owner of the premises, testified: "There is another crossing at the upper side of the field, but it is not as convenient as the one I am talking about." (This latter crossing is the one where the animals entered upon the track.) In speaking of the crossing where the animals went upon the track, the witness testified as follows: "I asked the section foreman to repair this crossing and fix it so that we could cross there, because it was more convenient for us to get in and out to the public road which led to San Marcos at this point. At the time I asked the foreman to fix this crossing, I had another leading out into this same road and could also go out at the Harwood house. This last way was nearer, but we had an extra gate to go through."

A comparison of this evidence with the above statement of the appellant characterizes the latter, and it is needless for us to further comment upon it.

There is also in the motion to certify the question to the Supreme Court a further statement that the facts stated by this court were not justified by the evidence in the case. This is all that counsel says upon this subject, and does not undertake to point out any particular finding, other than that previously mentioned, that is not sustained by the evidence. This general statement is as inaccurate as the specific statement heretofore noticed, which is disproved by the evidence copied from the record. There is not a statement of fact in the opinion that is not supported by the evidence. The evidence shows conclusively, beyond dispute, beyond room for contention, that the opening in question was one of mere convenience, to afford a convenient way to Johnson and his tenants to the public road. A way of necessity must be more than one of convenience. If the owner of the land can use another way, he can not claim by implication the right to pass over that of another to get to his own. Allen v. Carlton, 29 Texas, 78; Hall v. City of Austin, 48 S. W. Rep., 55; 19 Am. and Eng. Enc. of Law, 1 ed., 98.

"The right of way from necessity over the land of another is always of strict necessity, and this must not be created by the party claiming the right of way. It never exists where a man can get to his own property through his own land. That the way through his own land is too steep or too narrow does not alter the case. It is only where there is no way through his own land that the right of way over the land of another can exist. That a person claiming a way of necessity has already one way, is a good plea in bar to the plaintiff." This is the language of the court in McDonald v. Lindell, 3 Rawle (Pa.), 492. To the same effect is Morgan v. Mute, 60 Michigan, 338, and other cases that might be cited.

The court in Smiles v. Hastings, 22 New York, 223, says: "There can be no implication of a grant of a right of way of necessity where the

grantees have the means of obtaining access to the lands granted without trespassing on the adjoining lands of the grantor or the property of a stranger. If they can be approached from a public highway or by passing through adjoining lands of the grantee no right of necessity would be implied."

From the rule thus announced, together with the evidence upon this subject, this court was clearly justified in the conclusion that the opening in the right of way fence and the way from there to the public road was not one of necessity; and the opening in question could not be justified upon this ground, because it was clearly shown that it was merely for the convenience of the owner of the adjoining lands west of appellant's right of way.

It is insisted in the request to certify that the disposition of this case by this court is in conflict with the decision of the Supreme Court in Railway v. Hanacek, 55 Southwestern Reporter, 1117, and the same case as decided by the Court of Civil Appeals in 56 Southwestern Reporter, 938; and also in conflict with the case of Railway v. Chenault, 60 Southwestern Reporter, 55; and the statement is also made that we have attempted to overrule the decision of the Supreme Court in the Hanacek case, supra.

In the Hanacek case, in the latter part of the opinion of the Supreme Court, occurs this statement: "Of course, our decision does not apply to those cases where openings or intervals in fences not authorized by law have been made." This and other expressions in the opinion are applicable to the case before us, and support us in the conclusion reached by us in deciding this case. There is little ambiguity in our opinion. It seems to us that it can be easily understood to apply to a state of facts which shows that the opening through which the animals went upon the track was not one provided for, permitted, or authorized by law. Nor could it be granted on the ground that it was one of necessity. In the case before us, the appellant's road did not divide an inclosure, and the opening was not for the purpose of permitting the owner of the premises to go from one part of his grounds to that upon the opposite side of the track. It is not pretended that it was a public crossing nor a neighborhood crossing, and that the opening was made for any such purpose; but beyond dispute it is shown that it was placed there for the private use of the owner of the premises west of the appellant's right of way. In the cases with which the appellant contends ours is in conflict, it is indisputably shown by the facts that the railway ran through inclosures, and that the openings were put there for the purpose of affording a way to and from the premises and inclosures divided by the right of way. These were instances in which the owners of the premises were entitled to the opening as a means of way from one part of the inclosure to the other. Here the case is entirely different, for the reason, as stated before, the right of way and track does not divide an inclosure. When we said concerning the Hanacek case was a

mere matter of criticism, and not because it conflicted with the case we were called upon to decide. We availed ourselves of the privilege of merely criticising a decision of the Supreme Court, which we were of the opinion was not correctly decided.

On the question of witness fees, it is insisted that the disposition that we make of this subject is in conflict with the decision of the Supreme Court in Sapp v. King, 66 Texas, 570, and Flores v. Thorn, 8 Texas, 377. We do not so construe those decisions. The case is clearly, in our opinion, different from Flores v. Thorn. There are some expressions in the case of Sapp v. King which have a tendency to support the contention of appellant, but when compared with the facts shown in the order of the trial court in ruling upon this subject, a different case is shown. In Sapp v. King it is in effect held that a witness can not justify his attendance in obedience to a subpoena in a case where the law did not authorize the issuance of such process. In this case the law did authorize a subpoena to be issued; and we think that Sapp v. King is correct in the proposition that a subpoena could not be waived by a witness in a case where the law did not authorize one to be issued; but where the witness resides in the county where the case is pending, the law authorizes a subpoena to be issued requiring his attendance upon the trial; and we do not see why he may not waive the issuance of such process and by agreement do that which the law would compel him to do,—that is, attend the trial as a witness.

But, however, if we are wrong in this conclusion, we think the ruling of the court may be maintained upon the ground that the subpoena issued from the justice court, in obedience to which the witness attended the trial there, and thereafter in obedience to the same process attended the trial in the county court, was sufficient to entitle him to his witness fees. The statute requires that the justice of the peace before whom the case is tried shall transmit to the county court, to which the case is appealed, all the original papers, together with copies of his orders, judgments, etc. The evident object of this requirement is that the original papers shall serve some purpose in the county court, and nothing can be gained by sending the subpoenas there unless it was intended that they should be regarded as process showing what witnesses were summoned. After the case reached the county court, it is clear that depositions that have been used upon trial in the justice court need not be again taken. Although the trial is de novo in the county court, the statute does not in terms require that any new process shall issue after the case reaches that court; and it is in harmony with economy to hold that all the process issued by the justice of the peace may be kept alive, in order to require the parties and witnesses to appear in the court to which the case is appealed. If the witnesses will appear and do appear in the county court in obedience to the subpoenas issued from the justice court, it would clearly be to the interest of the litigants, so far as the saving of costs and expenses are concerned. It is true, a

subpoena could have issued from the county court to require the attendance of these witnesses, but when they appeared in obedience to the subpoena issued from the justice court, we can not well see how either of the parties could complain.

*Motions overruled.*