Missouri, Kansas & Texas Railway Company of Texas v.
Anton Hanacek.

No. 879.   Decided March 26, 1900.

1.   Railway—Fences—Crossings—Gates or Cattle-Guards—Killing Stock.

A railway company is not liable, unless on proof of negligence, for running over cattle which had escaped onto the premises of another than their owner, and thence, through the open gate to a railway crossing on said premises, onto the fenced right of way of the company. (Pp. 448, 451.)

2.   Same—Statutes Construed.

Construing Revised Statutes, articles 4427-4434, held, that all the same except the proviso to article 4427 and the exception in article 4431, refer to the crossings therein required to be made outside inclosures, which was the chief purpose of the law; and that the character of openings in inclosures divided by the road is not defined further than by the language of such proviso to article 4427. (P. 450.)

3.   Same—Inclosures—Kind of Opening.

The statute has not defined the kind of openings to be made within inclosures, which ordinarily affect only the owners and the railroad company, the kind being left to their determination. Where gates instead of openings and cattle-guards have been selected, no person other than the owner can complain that the track is not fenced as required by the statute. (P. 451.)

4.   Same—Decision Limited.

This decision does not involve the question whether the owner of the inclosure may require an opening with cattle-guards instead of gates; nor the effect on the sufficiency of a railway fence of leaving openings at intervals not authorized by law. (P. 451.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Fayette County.

*Brown, Lane & Garwood,* for appellant on certified question.   (*W. S. Holman,* on appeal.)—It is well settled that unless the statute specifically demands cattle-guards and wing fences, they are not required at farm crossings. Rev. Stats., art. 4427; Railway v. Robinson, 43 S. W. Rep., 76; Burgess v. Railway, 41 S. W. Rep., 703; Railway v. Johnson, 39 S. W. Rep., 323; Railway v. Glenn, 30 S. W. Rep., 845; Railway v. Grier, 49 S. W. Rep., 148; Railway v. Dyer, 46 S. W. Rep., 841; Railway v. Mitchell, 45 S. W. Rep., 819; Railway v. Severin, 30 Neb., 318; Sather v. Railway, 40 Minn., 91; Brooks v. Railway, 13 Barb., 594; Dent v. Railway, 83 Mo., 496; Railway v. Barton, 80 Ill., 72; Cook v. Railway, 36 Wis., 45; Fitterling v. Railway, 79 Mo., 504; Railway v. Spaulding, 112 Ind., 47; Megrue v. Lennox, 52 N. E. Rep., 1023; 3 Elliott on Railways, p. 1842; 7 Am. and Eng. Enc. of Law, title "Fences," p. 915.

There being no conflict of authority upon the proposition that where gates are erected at farm crossings for the accommodation of the owner of the farm, the duty of keeping the gates closed rests upon such landowner and he can not recover without proof of negligence in the operation of the train, the animals of a third party trespassing upon such inclosed land can occupy no higher position than those of such landowner, and negligence in the operation of the train must be shown as

a prerequisite to recovery. Railway v. Robinson, 43 S. W. Rep., 76; Railway v. Glenn, 30 S. W. Rep., 845; Railway v. Johnson, 39 S. W. Rep., 323; Adams v. Railway, 46 Kan., 161; McCoy v. Railway, 94 Cal., 568; Harding v. Railway, 6 Am. and Eng. Ry. C., 588; Sather v. Railway, 40 Minn., 91; Megrue v. Lennox, 52 N. E. Rep., 1023; Mannell v. Railway, 45 N. W. Rep., 568; Harrington v. Railway, 71 Mo., 384.

*C. E. Lane,* for appellee.—The purpose and intent of the proviso in article 4427, Revised Statutes of 1895, relative to openings within inclosures, was to provide a passway to the owner of such inclosure and his stock from one portion of his inclosure to the other, over the right of way and railway track of any railroad dividing such inclosure, regardless as to whether the same be either a farm or pasture, and that such passway should be free from any obstructions, either by gates or otherwise, so as to admit of the free and easy passage of horses, cattle, sheep, hogs, and other animals, wagons, and other vehicles, from one portion of such inclosure to the other. Rev. Stats., arts. 4427, 4428.

Railway companies are liable to the owner for the value of all stock killed or injured by their trains, in operating them, provided their road is not fenced (Revised Statutes, article 4528), and in the event suit is brought for the value of stock killed at a point where their track is not fenced, proof that such stock were killed by their trains is sufficient to justify recovery without proof of negligence.

If a railway company, at the request of and for the accommodation of B., should leave an opening in its right of way fence, which by law it is required to maintain, with the understanding and agreement with B. that he was to watch said opening and prevent stock from entering upon its track, it can not shift its liability to H. for his stock, killed by its trains, which had entered through such opening, so as to make B. liable to H. and thus relieve itself of its primary liability to H.

Since the adoption of article 4245, Revised Statutes of 1879, now article 4528, Revised Statutes of 1895, railroad companies are ipso facto liable for damages to stock by their trains, where their track is unfenced, and the burden of proving that their track was fenced with a good and sufficient fence to prevent stock from passing through it, is upon such company. Railway v. Miller, 1 White & W., C. C., sec. 263.

The liability of railway companies for killing or injuring stock in operating their trains is, by terms of statute, prima facie absolute, and the burden of proving that their track was fenced sufficiently to turn ordinary stock is upon such companies. Railway v. Loughbridge, 1 White & W., C. C., sec. 1300; Railway v. Simpson, 2 Willson, C. C., sec. 670; Railway v. Mitchell, 2 Willson, C. C., sec. 374.

While articles 4427 and 4428 of Revised Statutes of 1895 demand open crossings within inclosures of the dimensions set out in article 4428, and while they do not demand cattle-guards with wing fences, any railroad company fencing its track so as to avoid ipso facto liability, would not avoid such liability if it should leave such open crossings

without proper cattle-guards to prevent stock from straying upon their track and being injured by its passing trains, and if they left such crossings without cattle-guards they would be guilty of negligence per se.

Railway companies are not required to fence their track in this State, but if they do not do so and stock are killed by their trains they are guilty of negligence per se, and if they voluntarily undertake to fence so as to avoid liability without proof of negligence on their part, such fence must be sufficient to turn such stock as are injured by their trains. Openings in their fence without proper cattle-guards would not be such fence.

WILLIAMS, Associate Justice.—The question set forth below and the accompanying statement of the facts out of which it arises are certified by the Court of Civil Appeals for the First District for decision:

"Appellee sues to recover of appellant the sum of $145, the alleged value of two animals killed by a train of appellant on its railroad in Fayette County, Texas. Appellant's said railroad runs through the farm of J. C. Brown in said county, and in obedience to the statute and for the accommodation of said Brown appellant has constructed a crossing over its roadbed, connecting the portions of said farm severed by said railroad; it placed no cattle-guards at said crossing, but erected gates in the fence inclosing its right of way on each side of said right of way opposite said crossing. The animals in question escaped from an inclosure of appellee's, in which they had been placed by him, into the farm of said Brown, and, through one of said gates which had been left open, onto the railroad track of appellant, and were killed by one of its passing trains. The appellee never used such gates, had no control over nor connection with them of any kind, and same were not erected for his benefit. The animals were not killed on the crossing. Upon these facts, we respectfully certify to your honorable court for decision the following question:

"Can appellant be held liable for the killing of said animals without proof that it was in some manner guilty of negligence which was the proximate cause of such killing?"

By the first sentence of article 4528, Revised Statutes, railroad companies are made liable for the value of all stock killed by their locomotives and cars, but, by the second sentence, it is provided that "if they shall fence in their road, they shall only then be liable in cases of injury resulting from want of ordinary care." The decision of the question certified, therefore, obviously depends upon the answer to the inquiry, whether or not appellant had fenced in its road in the manner contemplated by this and other provisions of the statutes.

The principal contention of counsel for appellee is that the openings and gates in the fence in question were not authorized by law, and, hence, that the fence was not such as to exempt the company from the liability declared by the first part of the article cited. Whether or not such openings and gates are permitted or required, must depend upon other

provisions.   It is obvious that a fence otherwise sufficient, having only such openings as the law exacts or allows, is such a one as the provision referred to contemplates, and is therefore sufficient to protect from the statutory liability.

The provisions of the statutes bearing upon the question are those of the Act of 1887, page 39, which are embraced in the Revised Statutes as articles 4427 to 4434, inclusive.

"Art. 4427.   All railway corporations in this State which have, or which may hereafter fence their right of way, may be required to make openings or crossings through their fence and over their roadbed along their right of way every one and one-half miles thereof; provided, that if such fence shall divide any inclosure, that at least one opening shall be made in said fence within such inclosure.

"Art. 4428.   Such crossings shall not be less than thirty feet in width, and shall be made and kept in such condition as to admit of the free and easy passage of horses, cattle, sheep, hogs, and all other domesticated animals, wagons and other vehicles.

"Art. 4429.   Such crossings shall be made at such times and places as may be demanded by any two or more citizens of the State who either live or own land within five miles of the place where such crossings may be demanded.

"Art. 4430.   Such demand shall be made in writing, of the nearest local agent of such railway company to the place where such crossing or crossings are demanded, and shall state when and where such crossing is desired.

"Art. 4431.   No railway company shall be required to complete such crossing as may be demanded under this chapter in a shorter time than thirty days from the day on which such demand is first made, nor shall they be required to make any crossings where they have already left such crossings in each one and one-half miles of their road, except inside of inclosures, as provided in article 4427.

"Art. 4432.   Any railway company, upon such demand, shall be deemed to have complied therewith upon making such crossings within four hundred yards of the place where they are demanded, within the time herein allowed.

"Art. 4433.   Whenever any railway company shall fail or refuse to comply with the requirements of this chapter, after demand is made in accordance herewith, such railway company shall pay to the persons who made such demand each the sum of five hundred dollars for each and every month they shall so fail or refuse to comply with such demand, the same to be recovered by suit in any court of this State having jurisdiction of the amount.

"Art. 4434.   Nothing in this chapter shall be so construed as to affect the law requiring railroad companies to provide proper crossings at intersection of all roads and streets."

Under article 4427, "openings or crossings" of the character defined

in article 4428, through fences and over roads, may be required of railroad companies by a compliance with the provisions of articles 4429, 4430, and 4431; and by the proviso to article 4427, an "opening" in the fence is required when it divides an inclosure. The "openings or crossings" through fences and over roads are required, by the first part of article 4427, for the benefit of others than the owners of inclosures through which the road passes, while the "openings" named in the proviso are evidently required for the benefit of the owners of inclosures, to secure their right of way from one part of the premises to another. The latter is not named as a crossing, but merely as an opening. The subsequent sections all speak of crossings. All of them, except article 4428, by their express language, plainly refer to the openings or crossings first mentioned in article 4427, and refer to them merely as crossings. Article 4428 refers only to crossings. The use, in this article, of the same word, "crossings," in describing the character of the thing required, as that employed in subsequent provisions relating alone to those crossings required to be made outside inclosures, indicates that all of the provisions of the statute, except the proviso of article 4427, and the exception made to the provisions of article 4431, were made with reference to them alone. This is made more evident by the change in the language of article 4427, itself, from "openings or crossings through their fence and over their roadbed," in the first part, to "opening * * * in said fence within such inclosure," in the proviso.

This view of the statute results in the conclusion that its chief purpose was to secure openings through fences and crossings over roads of the character defined in article 4428 to residents or owners of land in neighborhoods through which the road passes, and that the proviso was introduced merely to recognize and secure to owners of inclosures their right of access to and passage through their lands thus divided. The character of these openings of the latter kind is not defined further than by the language of the proviso, but was doubtless intended to be such as should be appropriate to the situation and needs of the owner. Railway v. Chenault, 92 Texas, 501.

Appellee's contention, stated more fully, is that the provisions of the statute under discussion require open crossings, where openings are made in fences within inclosures, and that to such crossings, cattleguards or stops would be essential to prevent animals passing through them from straying upon other parts of the track, and that without such incidents, the tracks would not be fenced as required. It may be true that where a crossing open to use by people and stock indiscriminately is made, cattle-guards or other protection of that character would be essential to constitute a fenced track in the sense of the statute. While the statute does not, in terms, so provide, it does require that the track be fenced, and since there are some places, such as depot grounds, highways, crossings, etc., which can not be fenced, it may follow that in order to meet the requirement as to fencing, provision against the en-

trance of animals through such openings upon other parts of the track would be necessary to secure the immunity given when the tract is fenced. But the necessity for such stops would not be the same where an opening is to be left in a fence running through an inclosure, for the use only of those interested in the inclosure. The difference between the purposes and uses of the two kinds of openings furnishes a reason for the difference in the statutory requirements respecting them which has been pointed out, and strengthens the construction which has been put upon them. The crossings required open a passage way for persons and animals generally, while openings within inclosures ordinarily affect only the owners and the railroad company.

The Legislature has therefore required such provision to be made for the convenience of the owner of the inclosure, and a compliance with the requirement does not prevent the fencing of the track from having the effect provided by article 4528. The kind of opening to be provided, the statute has not defined, but has left to the determination of the railroad company and the owner. The rights of the latter are not now under investigation, and no question can arise as to whether or not the provision made for him by appellant was such as he had the right to demand. A gate through the fence was certainly as little as he could have been entitled to, under the statute, and therefore no one else can say that the fence was a less effectual protection to his stock than the law demanded.

Of course, our decision does not apply to those cases where openings or intervals in fences not authorized by law have been made. The question submitted depends wholly upon the provisions of the statutes of this State, and decisions made in cases of the character just referred to are not in point.

We conclude that the question should be answered in the negative.

The question discussed by counsel, whether the duty of keeping the gate closed devolved upon the owner or the railroad company, is not presented by the certificate, since the only question is whether or not appellant can be made liable without proof that it was guilty of negligence. Its track being fenced as required by statute, it can only be made liable by proof of want of ordinary care.