WALKER D. HINES, DIRECTOR-GENERAL OF RAILROADS, v. W. S. BAKER.

No. 3501.    Decided February 28, 1923.

(248 S. W., 336.)

### 1.—Railways—Fencing—Private Crossing—Enclosed Lands—Killing Stock.

Article 6486, Revised Statutes, providing for openings where the fenced track of a railway divides any enclosure, does not apply to or require such openings for the benefit of a proprietor of unfenced land so divided by the railroad.    (pp. 486-492).

### 2.—Same—Statutory Construction.

Courts have nothing to do with the wisdom or unwisdom of a statute; but if that is to be considered, sufficient reason appears for a distinction between openings across the track in fenced tracts and in those unenclosed, in that the latter endanger all stock at large, but the former only that of the proprietor for whose convenience the opening is provided. (pp. 491, 492).

Question certified from the Court of Civil Appeals for the First District, in an appeal from the County Court of Grimes County.

The Supreme Court, having referred the question to the Commission of Appeals, Section B, for their opinion, here adopts same as its answer thereto.

*Henderson & Ranson,* (John M. King of counsel) for appellant.

The undisputed evidence showing that at the place where this animal entered the right-of-way the railroad of appellant ran through the farm of one J. H. Stewart from one side of said farm to the other, bisecting the same, and there was but one opening through said right-of-way fence within the Stewart farm, and that the said opening was protected by gates which were in good condition and that the railroad right-of-way fence was in good condition, the opening in the right-of-way fence was one required by law, and it was error for the Court to find that the defendant failed to use ordinary care in keeping his right-of-way fence closed and that said failure was the proximate cause of such injury to Plaintiff's mule.    Rev. Stats., arts., 6486, 6603; M. K. & T. Ry. Co. v. Hanacek, 93 Texas, 446; M. K. & T. Ry. Co. v. Chenault, 24 Texas Civ. App., 481, 60 S. W., 55; H. & T. C. Ry. Co. v. Hollingsworth, 29 Texas Civ. App., 306, 68 S. W., 724; M. K. & T. Ry. Co. v. Davis, 118 S. W., 234; Texas Cent. Ry. Co. v. Jenkins, 120 S. W., 948; M. K. & T. Ry. Co. v. Butler, 121 S. W., 176.

*Lewis & Dean,* for appellee.

To escape liability under the statute for stock killed by its locomotives and cars, a railway company must not only show that it

fenced its road but also kept its road fenced so as to exclude live stock of ordinary disposition and docility from entering upon its road beds and tracks and a partial enclosure will not exempt the company from liability. Ft. Worth & R. Gr. Ry. Co. v. Swan, 97 Texas, 338; Texas Central Ry. Co. v. Pruitt, 101 Texas, 548; Railway Co. v. Swift, 42 Ind., 119; I. & G. N. v. Seawright, 8 Texas Civ. App., 593, 28 S. W., 39.

MR. JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals for the First District:—

"In the above styled and numbered cause, now pending on rehearing in this court upon an appeal from the County Court of Grimes County, the question hereinafter stated, which is material to a determination of the appeal, arose out of the facts disclosed by the record as follows:

"The I. & G. N. Railroad runs through the land or farm of J. H. Stewart, its right-of-way being fenced across the Stewart place, and there being one opening and gate in the fence on each side of the railroad, but the Stewart property so lying on both sides of the railroad track was not enclosed.

"The cause turns upon the construction of Article 6486, Vernon's Sayles' Civil Statutes of 1914, which in full is as follows:—

"'Art. 6486. All railway corporations in this state which have or which may hereafter fence their right-of-way, may be required to make openings or crossings through their fence and over their road-bed along their right-of-way every one and one-half miles thereof; provided, that if such fence shall divide any enclosure, that at least one opening shall be made in said fence within such enclosure.'

"On original hearing a majority of this Court determined that by the passage of this law the legislature meant what was held to be plainly stated by the language therein used, that is, to require at least one opening in a right-of-way fence which in fact divides any enclosure, rather than that its intendment was to give land owners generally whose property is bisected and traversed by railroad rights-of-way an opening or means of going from one portion of their farms, situated on opposite sides of the railroad to another, without reference to whether such lands are comprised within an enclosure or not, and consequently that the Railroad Company in this instance was not protected by this enactment.

"One member of the court dissented, however, taking substantially the alternative view above expressed.

"We now deem it advisable to certify for your decision the ques-

tion: Did the majority of this court err in the construction so given the statute quoted?''

In passing upon this question, the majority opinion of the Court of Civil Appeals reads as follows:—

''The argument of appellant, in effect, is that the legislature did not mean what it here so plainly says, that is, to require at least one opening in a right-of-way fence which in fact divides any enclosure, but that its purpose and object was to give land owners generally whose property is bisected and traversed by railroad rights-of-way an opening or means of going from one portion of their land situated on opposite sides of the railroad to another, without reference to whether such lands were comprised within an enclosure or not.

''This court is unable to agree with him; it seems to us the meaning of the statute is made quite clear by the simple and unequivocal language used, and that to read into it the view contended for by appellant would be to discard its plain terms and glean its purport from extraneous sources.''

Judge Lane, dissenting, adopted the contention raised by the Railway Company, as set out in the majority opinion above quoted.

The Article of the statute first above quoted was a part of the Act of 1887 and can be found in full in Gammell's Laws, Vol. 9, p. 837. The various provisions of that Act are also set out in full by Judges Brown and Williams in their opinions in cases to which we shall hereafter refer.

In addition to Article 6486 set out in the certificate above, the Act prescribes the character of crossings, their location and construction, method of obtaining same, etc.

Although this Act has been the law in this State for more than thirty-five years, it seems that this is the first time any one has ever contended in an appellate court in Texas that the article in question should be construed as the minority opinion in the instant case does construe it. Decision after decision has been rendered, apparently taking it for granted that the legislature used the word ''enclosure'' advisedly and meant what it said. We shall refer to some of these decisions hereafter. In them, there is no holding construing this statute on this point. But, as we see it, the courts clearly evidence their opinion that the statute means what it says.

What does ''enclosure'' as used in the statute mean? In the absence of any provision in the Act, evidencing a contrary intention, it will be presumed that the legislature used the word in its usual and ordinary signification. But, even if you apply to the word its broadest possible meaning, it cannot be stretched so as to include an open tract of land. Such a tract could not possibly be one ''within an enclosure.'' Counsel for the Railway Company cite no authority, text or decision, so extending the meaning of the word ''enclosure.''

Judge Lane cites no authority in that connection. We have been unable to find any such authority in Texas or elsewhere. "Words & Phrases," Vol. 4, p. 3497, defines an enclosure as applied to land as follows:—

"Inclosed," when applied to lands, as defined by Webster, is 'separated from common grounds by a fence.' Worcester defines it as 'parted off or shut in by a fence; set off, as private property.' Inclosed lands, therefore, are lands surrounded by a fence. Kimball v. Carter, 27 S. E., 823, 825, 95 Va. 77, 38 L. R. A., 570."

Therefore, in order to give the statute the construction contended for by the Railway Company, the proviso section of this statute must be re-written by the courts. This section must be, in effect, repealed by the courts and amended or re-written by them before the Railway Company's contention can be sustained. Said contention demands, as we see it, a rejection of the language used by the legislature. We think Judge Graves correctly hold herein that this cannot be done by the courts. The language of the statute is "simple and unequivocal." It is but fair to assume that the legislature intended to do what it actually did do. If it had desired to write the statute as Judge Lane thinks they intended to write it, there was nothing to prevent them from doing so. It was a simple matter and they could have very easily declared that every owner of land, divided by a railway company's fence, should have at least one opening. But, these gentlemen writing this law did not so provide. For the courts to take this matter out of their hands would clearly constitute an invasion of their constitutional prerogatives. The courts are not created for the purpose of taking over the duties of the legislature in making laws for the people.

We seriously doubt if we should consider extraneous matters in construing this statute, for the article itself, in and within itself, seems perfectly clear to us. But, we have carefully investigated the caption of this Act of 1887, and its other provisions, as well as the legislative journals relative thereto, and we find nothing warranting the construction of the statute upheld by the minority of the Galveston court. The statute as written, is entirely consistent with the caption and other provisions of the Act of 1887.

Not only so, but it is clearly in line with all the statutes of this State which seek to protect livestock from death or injury on railway tracks. Article 6603 of our statutes makes Railway Companies absolutely liable for all stock killed or injured by the cars and locomotives of said companies, unless the latter fenced their roads, in which event they shall only be liable for injury resulting from a want of ordinary care. Our law-makers knew that railway tracks were veritable death-traps for livestock and that their protection demanded that railway rights-of-way be fenced. They knew that

every opening into such a right-of-way increased that much the hazard to livestock. So, the legislature established this general requirement of fences in the most effective manner possible. These fences are required everywhere except at a few places where the courts have declared that the public convenience demands the fences be left off. In such cases, the legislature having been silent, the courts have, of necessity, read a few exceptions into the general requirement of these fences. We refer to public road crossings, switching and station limits, certain portions of incorporated cities under peculiar conditions as illustrations of such exceptions. But, the courts have been slow to add to this list of exceptions to the general rule requiring fences.

Furthermore, the legislature decided that neighborhoods were entitled to crossings every mile and a half and that private individuals, under certain circumstances, should have openings in the railway fences. Therefore, this Act of 1887 was passed by the legislature. A part of this Act has already been set out as Art. 6486. So, it seems clear to us that this very article now under consideration is entirely consistent with the general purpose of our statutes, in this connection, as a whole.

We shall now refer to several decisions showing the views of our appellate courts as to the purpose the legislature had in mind in passing this very article. In doing so, we shall quote a few expressions of the courts which are all persuasive, in our view, as sustaining the construction given this statute by a majority of the Court of Civil Appeals in the case at bar, and as showing that there is no intimation in said decisions to the effect that the courts felt that the language of this statute should be rejected.

In the case of Gulf, C. & S. F. Ry. Co. v. Rowland, 70 Texas, 298, 7 S. W., 718, Judge Gaines says:

"We therefore think that as in all subsequent acquisitions of rights of way in the absence of some express or implied agreement to the contrary, the railroad companies will be charged with the duty imposed by the statute, and the measure of the compensation will be regulated accordingly. Therefore, as to such future cases, in our opinion, the statute should be constitutional, in so far as it applies to crossings within inclosure. (Smith v. Railroad Company, 63 New York, 58.)"

In the case of Missouri, K. & T. Ry. Co. v. Chenault, 92 Texas, 501, 49 S. W., 1035, Judge Brown speaks as follows:

"A careful study of the Act of 1887, embodied in the articles above quoted, will disclose the fact that the leading purpose of the legislature was to provide *crossings outside of inclosures and independent* of streets and public roads, at intervals not greater than one and one-half miles, so that citizens and their stock might pass freely,

from one side of the railroad to the other.  The requirement with regard to crossings within inclosures was introduced by a proviso, and the structure of the act indicates that it was more a measure of precaution against affecting an existing right than to provide a remedy or to confer a new right.  We do not intend to intimate that the right does not exist under the statute.''

In the same case Judge Brown also says:

''In article 4431 (now Art. 6490), the railroad company is exempted from compliance with the demand if it has already openings at the distance of one and one-half miles, except within inclosures.  By this it was intended to provide that if there should be a crossing outside of and near to the inclosure, this should not exempt the railroad company from constructing such crossing within the inclosed premises which its road divided.''

In the same case of Railway Company v. Chenault, the Court of Civil Appeals at Dallas, later referred (60 S. W., 58) to Judge Brown's language first above quoted by us, and then continues:

''The existing right to which Judge Brown refers was the common law right to a way of necessity, which, as we have seen above, must always be adequate, and which the owner of the enclosure was bound to put in and maintain at his own expense, after being compensated for so doing by the company.  In what respect did the legislature intend to change the existing right?''

In the case of Missouri, K. & T. Ry. Co. v. Hanacek, 93 Texas, 446, 55 S. W., 1117, Judge Williams sets out all the provisions of the Act of 1887, and construes certain sections thereof.  He refers particularly to Art. 4428 (now article 6487) reading as follows: ''Such crossings shall not be less than thirty feet in width, and shall be made and kept in such condition as to admit of the free and easy passage of horses, cattle, sheep, hogs, and all other domesticated animals, wagons and other vehicles:

We quote from his opinion this language:

''This view of the statute results in the conclusion that its chief purpose was to secure openings through fences and crosings over roads of the character defined in article 4428 to residents or owners of land in neighborhoods through which the road passes, and that the proviso was introduced merely to recognize and secure to owners of inclosures their right to access to and passage through their lands thus divided.  The character of these openings of the latter kind is not defined further than by the language of the proviso, but was doubtless intended to be such as should be appropriate to the situation and needs of the owner.  Railway v. Chenault, 92 Texas, 501.''

''Appellee's contention, stated more fully, is that the provisions of the statute under discussion require open crossings, where open-

ings are made in fences within inclosures, and that to such crossings, cattle-guards or stops would be essential to prevent animals passing through them from straying upon other parts of the track, and that without such incidents, the tracks would not be fenced as required. It may be true that where a crossing open to use by people and stock indiscriminately is made, cattle-guards or other protection of that character would be essential to constitute a fenced track in the sense of the statute. While the statute does not, in terms, so provide, it does not require that the track be fenced, and since there are some places, such as depot grounds, highways, crossings, etc., which can not be fenced, it may follow that in order to meet the requirement as to fencing, provision against the entrance of animals through such openings upon other parts of the track would be necessary to secure the immunity given when the tract is fenced. But the necessity for such stops would not be the same where an opening is to be left in a fence running through an inclosure, for the use only of those interested in the inclosure. The difference between the purposes and uses of the two kinds of openings furnishes a reason for the difference in the statutory requirements respecting them which has been pointed out, and strengthens the construction which has been put upon them. The *crossings* required open a passage way for persons and animals generally, while *openings within inclosures* ordinarily affect only the owners and the railroad company.''

Judge Williams' opinion just quoted was followed by Section A of the Commission of Appeals in the very recent case of St. Louis, S. W. Ry. Co. v. Gilbert, 112 Texas, 288, 246 S. W., 347.

The Court of Civil Appeals at Fort Worth, in the case of Chicago, R. I. & G. Ry. Co., v. Wilson, 124 S. W., 133, employs this language:—

''But in the present case, as will be seen from our statement in the former opinion, the gate constructed by appellant is not ''within' an inclosure at all, but is at a point at the end of an open lane which is literally and to all intents and purposes in the outside fence of such inclosure. In that case the right of way at such a point is exposed to all the hazards of trespassing stock, and the public is as much entitled to demand the protection of a fence as at any other point not actually within an inclosure. The statute quoted does not seem to contemplate that an owner, whose inclosure was divided by a line of railway, would be entitled to demand an opening in the right of way fence except at some point within his inclosure. If the owner then is not entitled to demand such opening, clearly the rail way company is not required to make it, and its doing so would not relieve it of the duty imposed by law to fence its track.''

We submit that the language of these cases shows that our courts have never thought that the proviso section of the article now under consideration referred to open tracts of land.

Judge Lane cites no authorities to sustain his views as to the construction of this statute. He gives us several general rules governing the construction of statutes. But, he makes no practical application of such rules to this very statute. He says he thinks the legislature intended to provide an opening across the land of every owner when said land was divided by railway fences, whether that land be enclosed or open, and that his conclusion as to such an intention on the part of the law-makers is due to his belief that any other kind of statute might work a hardship on an individual under certain circumstances. In this connection, Judge Lane says:—

"Let us suppose a farmer owns a farm lying adjacent to a river 400 varas square and a railroad right-of-way crosses such river at right angles and runs through the center of such farm. Can it be reasonably held that under the law the railway company may fence its right-of-way through such farm and extend the same for a mile or more beyond it without leaving an opening so as to give such farmer access from one part of his farm to the other part? I think not."

It seems to us that Judge Lane has entered the realm of the policy of the law. The courts cannot do this. With the wisdom or unwisdom of any given statute the courts have nothing to do. The courts, doubtless, frequently feel that laws are not written in the best terms for the public or private good. But, the remedy is not with the courts. If the legislature shall hereafter conclude that this aged statute has outgrown its usefulness, because of modern conditions or otherwise, its members can re-write the same at any time. That is a much safer method, under our system of independent branches of government.

But, we will say in passing, that it seems to us there is much reason for the provisions as actually written by the law makers. Judge Lane seems to base his conclusions solely upon the convenience of the individual land owner. Upon that basis, it would perhaps be better for the individual property owner to have this statute construed as Judge Lane suggests. In fact, so far as the land owner himself is concerned, in the use of his land, he would be better off if the railroad did not cross his land at all. But the railroads had to come because of the general welfare of the people.

It has never been the policy of the law to award individuals every convenience at the expense of the rights of their neighbors. The legislature, in enacting this very article declares that, in its judgment, a crossing every mile and a half is all that is necessary for the *public*. Still, the law makers were glad to give the owners of *enclosed land* a private opening across the railroad dividing said lands, because such openings would not ordinarily affect the stock of others. In other words, we think the legislature was unwilling to

endanger livestock of others, which was at large, just in order to make more convenient the use of one's land by its owner. If the person, for whose benefit the opening was required, does not keep the opening or gates closed, he has no one to blame but himself. We doubt if it should be said that the legislature erred in requiring land to be inclosed if the owner thereof wanted this private opening across the track. It might well be said that if a man desires certain privileges, he should be willing to protect his neighbors from the dangers incident to his exercise of such privileges. The hypothetical case Judge Lane suggests presents a person whom the legislature might have thought should be willing to meet the requirements of the statute if he wanted the desired opening. Furthermore, if such a person thought it would be cheaper to pay for the livestock of others which might be killed because the gates of his opening might be left open, he should, at least, be willing to try to have the railroad company consent to giving him an opening upon condition that he afford it satisfactory security to indemnify it against losses due to the gates being left open.

Judge Williams clearly had in mind that these private openings were restricted to enclosed lands and did not include open lands. If he had thought the statute referred to open lands, we do not think he could have used this language in Railway Co., v. Hanacek, *supra*: "The crossings required open a passage way for persons and animals generally, while *openings within inclosures* ordinarily affect only the owners and the railroad company." Such *openings* affect those parties only for the reason that the land which is fenced is not open to animals of other people. If said openings in the railroad fences were into an open field or tract of land, ordinarily said railroad fence openings would necessarily affect all livestock and the rights of many other people.

We entertain no doubt of the correctness of the construction of this statute by the majority of the Court of Civil Appeals at Galveston, and which construction has been set out in full in the certificate from that court heretofore quoted.

Therefore, we recommend that the certified question propounded herein be answered in the negative.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.